IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DENNIS BAUGHMAN,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )
                                    )   Civil Action No. 08-850
MICHAEL J. ASTRUE,                  )
COMMISSIONER OF                     )
SOCIAL SECURITY,                    )
                                    )
                Defendant.          )

## MEMORANDUM JUDGMENT ORDER

AND NOW, this ___26th___ day of August, 2009, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry

differently.   Farqnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.
2001).  Moreover, it is well settled that disability is not
determined merely by the presence of impairments, but by the
effect that those impairments have upon an individual's ability to
perform substantial gainful activity.  Jones v. Sullivan, 954 F.2d
125, 129 (3d Cir. 1991).   These well-established principles
preclude a reversal or remand of the ALJ's decision here because
the record contains substantial evidence to support the ALJ's
findings and conclusions.

Plaintiff filed his application for DIB on February 11, 2005,
alleging disability beginning February 7, 2005, due to post
traumatic stress disorder.  Plaintiff's application was denied.
At plaintiff's request, an ALJ held a hearing on July 13, 2006.
On July 28, 2006, the ALJ issued a decision finding that plaintiff
is not disabled.  The Appeals Council denied plaintiff's request
for review on April 13, 2007.  Plaintiff subsequently commenced a
civil action before this court at Civil Action No. 07-753.  That
case was remanded at the Commissioner's request because a
recording of the administrative hearing could not be located.
Another administrative hearing was held on April 8, 2008.  The ALJ
issued a decision on May 9, 2008, again finding that plaintiff is
not disabled.  The instant action followed.

Plaintiff was 60 years old at the time of the ALJ's most
recent decision and is classified as a person closely approaching
retirement age under the regulations.  20 C.F.R. §404.1563(e).
Plaintiff has a high school education and some education at the

college level.  Plaintiff has past relevant work experience as a positron emission tomography machine medical technician, but he has not engaged in substantial gainful activity at any time since his alleged onset date.

After reviewing plaintiff's medical records and considering his testimony, the ALJ found that plaintiff suffers from the severe impairments of post traumatic stress disorder, anxiety disorder and a history of polydrug dependency.  The ALJ determined that those impairments, either alone or in combination, did not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").  The ALJ then found that plaintiff retains the residual functional capacity to perform work at any exertional level, but he has a number of non-exertional limitations. Plaintiff is limited to work that involves simple, routine, repetitive tasks that is not performed in a fast-paced production environment.  In addition, he requires work that involves only simple work-related decisions and relatively few work place changes.  Finally, plaintiff is limited to no more than occasional interaction with supervisors or co-workers and no interaction with the general public (collectively, the "RFC Finding").

Based upon testimony by a vocational expert at the hearing, the ALJ concluded that plaintiff could not perform his past work, but his vocational factors and residual functional capacity enable him to make an adjustment to other work that exists in significant numbers in the national economy, such as a box bender, a mold

filler or a garment sorter. Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

To regularize the adjudicative process, the Commissioner has promulgated regulations that govern the evaluation of disability. 20 C.F.R. §§404.1501-.1598. The process is sequential and follows a "set order" of inquiries. 20 C.F.R. §404.1520(a)(4). The ALJ must determine: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of his age, education, work experience and residual functional capacity. Id.; see also Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1520(a)(4); see

Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982).

In this case, plaintiff challenges the ALJ's findings at step 5 of the sequential evaluation process. At step 5, the Commissioner must show that there are other jobs that exist in significant numbers in the national economy which the claimant can perform consistent with his age, education, past work experience and residual functional capacity. 20 C.F.R. §404.1520(g)(1). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §404.1545(a)(1); Fargnoli, 247 F.3d at 40. In assessing a claimant's residual functional capacity, the ALJ considers the claimant's ability to meet the physical, mental and other sensory requirements of work. 20 C.F.R. §404.1545(a)(4).

Here, plaintiff argues that the ALJ erred at step 5 because: (1) he did not give appropriate weight to the opinion of plaintiff's treating psychiatrist; (2) he did not properly assess plaintiff's credibility; and (3) his hypothetical question to the vocational expert was inadequate. The court finds that these arguments lack merit for the reasons explained below.

Plaintiff first argues that the ALJ did not give appropriate weight to the opinion of his treating psychiatrist, Dr. Joseph Fetchko, who concluded that plaintiff is unable to work. (R. 150, 237-38, 361). The ALJ found that Dr. Fetchko's opinion only was entitled to minimal weight because the doctor's own written treatment records do not support his conclusion that plaintiff

cannot work, nor does the opinion of Dr. Tim Bridges, who performed a consultative examination of plaintiff. (R. 277).

A treating physician's opinion on the nature and severity of a claimant's impairment will be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other evidence of record. 20 C.F.R. §404.1527(d)(2); Fargnoli, 247 F.3d at 43. Under this standard, Dr. Fetchko's opinion was not entitled to controlling weight.

Dr. Fetchko's own treatment notes are inconsistent with his opinion that plaintiff cannot work. Dr. Fetchko's treatment notes from April 2006 through April 2008 indicate plaintiff's mental condition improved and remained stabile. During that time period, Dr. Fetchko stated in his treatment notes on 17 occasions that plaintiff's thought process was logical and goal directed, his mood was euthymic, his affect was full, his speech was a normal rate and volume, his insight was good, his judgment was intact, his interest level was fair, and he did not have suicidal or homicidal intentions. (R. 203, 362, 375, 377, 379, 382, 428, 443, 446, 448-49, 451, 453, 454, 457, 458-59, 460, 462).

Dr. Fetchko's assessment of plaintiff's capabilities set forth in his written treatment notes is consistent with Dr. Bridges' consultative examination of plaintiff. Dr. Bridges found that plaintiff answered questions quickly and accurately, he was able to communicate clearly, he had no difficulty understanding simple questions, his mood and overall affect were appropriate and

pleasant, he was oriented in all three spheres, and his insight and judgment were appropriate. (R. 167-68). In sum, Dr. Fetchko's own treatment notes and Dr. Bridges' consultative examination contradict Dr. Fetchko's opinion that plaintiff is unable to work.[1]

In connection with plaintiff's argument that the ALJ gave inadequate weight to Dr. Fetchko's opinion, he also argues that Dr. Fetchko consistently reported he had a GAF score of no more than 50, which is consistent with a disabling level of impairment. The GAF scale, designed by the American Psychiatric Association, is used by clinicians to report an individual's overall level of mental functioning. The GAF scale considers psychological, social and occupational functioning on a hypothetical continuum of mental health to illness. The highest possible score is 100 and the lowest is 1. A score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or

---

[1]Plaintiff argues that Dr. Fetchko's opinion that he is unable to work is supported by the report of an examination conducted by Dr. Gaither from the Department of Veteran's Affairs ("DVA"), in which Dr. Gaither concluded that plaintiff was entitled to benefits from the DVA. Dr. Gaither's written report indicates that plaintiff was alert and oriented, his speech was normal, his thought process was logical and goal directed, he had no difficulty with attention and concentration and his judgment and insight were good, all of which is contrary to his conclusion that plaintiff is "unemployable." (R. 389-90). Nevertheless, whether or not plaintiff is considered to be "unemployable" for purposes of receiving DVA benefits is irrelevant herein. A determination made by another agency regarding disability is not binding on the Commissioner of Social Security. See 20 C.F.R. §404.1504.

school functioning (e.g., no friends, unable to keep a job). Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 2000).

The court notes that the Social Security Administration has declined to endorse the use of the GAF scale because its scores do not have a direct correlation to the disability requirements and standards of the Act. See Fortney v. Astrue, 2008 WL 4425808, *3 (W.D.Pa. Sept. 29, 2008), citing, "Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 Fed.Reg. 50746 (August 21, 2000). Instead, the ALJ is to consider the clinical findings contained in the narrative reports of medical sources, and is to weigh that evidence under the standards set forth in the regulations for evaluating medical opinion evidence, taking into account numerous factors including whether the opinion is supported by and consistent with other evidence. 20 C.F.R. §404.1527(d).

Here, the ALJ noted in his decision that Dr. Fetchko assessed plaintiff's GAF scores at no more than 50. [2]  More importantly, however, the ALJ analyzed and considered Dr. Fetchko's treatment

---

[2]In connection with plaintiff's GAF scores argument, he asserts that the United States District Court for the Eastern District of Pennsylvania held in Colon v. Barnhart, 424 F.Supp.2d 805 (E.D.Pa. 2006), that an ALJ's failure to discuss GAF scores of 50 or below is reversible error which requires remand for further administrative proceedings. Contrary to plaintiff's assertion, Colon did not hold that the failure to discuss GAF scores below a certain level constitutes reversible error. Nevertheless, in this case, the ALJ referred to Dr. Fetchko's GAF score assessments in his decision and explained why he gave Dr. Fetchko's opinion minimal weight.  (R. 277).

notes as discussed above and found the doctor's conclusion that plaintiff is unable to work is inconsistent with those treatment notes and other medical evidence in the record.  The court finds that the ALJ properly considered and weighed Dr. Fetchko's opinion in concluding that plaintiff is not disabled.

Plaintiff next contends the ALJ did not properly evaluate his credibility because the ALJ failed to consider that plaintiff's 40-year work history and military service add credence to his allegation of disability.  A claimant's complaints and other subjective symptoms must be supported by objective medical evidence.  20 C.F.R. §404.1529(c); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  An ALJ may reject the claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony.    Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). In addition, although a claimant's work history is one of many factors an ALJ must consider in assessing a claimant's subjective complaints, 20 C.F.R. §404.1529(c)(3), an ALJ is not required to equate a long work history with credibility.    See   Christl v. Astrue, 2008 WL 4425817, *12 (W.D.Pa. Sept. 30, 2008).

Although the ALJ did not automatically equate plaintiff's long work history with enhanced credibility, the ALJ recognized that plaintiff worked in the medical field for nearly 40 years. (R. 272).  The ALJ's credibility analysis also considered all of the relevant evidence in the record, including the objective medical   evidence,   plaintiff's   activities   of   daily   living,

plaintiff's treatment history, therapy and medications and the fact that he never required inpatient psychiatric hospitalization, plaintiff's own statements about his symptoms, and reports by his physicians about his symptoms and how they affect him.  See 20 C.F.R. §§404.1529(c)(1)-(3); Social Security Ruling 96-7p.  The ALJ also considered the extent to which plaintiff's subjective complaints reasonably could be accepted as consistent with the evidence of record and how his claimed limitations affect his ability to work.  20 C.F.R. §404.1529(c)(4).

The ALJ ultimately determined that the objective evidence is inconsistent with plaintiff's allegation of total disability, and found that plaintiff's testimony regarding his limitations was not entirely credible.  (R. 272).  This court finds that the ALJ adequately explained the basis for his credibility determination (R. 272-77), and is satisfied that such determination is supported by substantial evidence.

Plaintiff's final argument is that the ALJ's hypothetical question to the vocational expert was inadequate because it did not incorporate all of his work-related limitations arising from his mental impairments.  This argument essentially repeats plaintiff's dispute with the ALJ's credibility analysis and his contention that the ALJ gave inadequate weight to Dr. Fetchko's opinion, arguments which have been rejected as explained above.

An ALJ's hypothetical question to a vocational expert must reflect all of the claimant's impairments and limitations supported by the medical evidence.  Chrupcala v. Heckler, 829 F.2d

1269, 1276 (3d Cir. 1987).  In this case, the ALJ's hypothetical accounted for plaintiff's mental limitations that were supported by the evidence of record and incorporated into the RFC Finding. Accordingly, the ALJ did not err in relying on the vocational expert's testimony to conclude that plaintiff can perform other work which exists in the national economy.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act.  The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

Gustave Diamond
United States District Judge

cc:  Karl E. Osterhout, Esq.
     1789 South Braddock Avenue
     Suite 570
     Pittsburgh, PA 15218

     Jennifer Andrade
     Assistant U.S. Attorney
     700 Grant Street
     Suite 4000
     Pittsburgh, PA 15219

AO 72
(Rev. 8/82)